UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DARRELL L. HALL,

           Plaintiff,

v.                                               Case No.  5:07-cv-423-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

           Defendant.
_____/

## ORDER

Plaintiff appeals from a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for a period of disability and disability insurance benefits. (Doc. 1.)  The Commissioner has answered (Doc. 5), and both parties have filed briefs outlining their respective positions. (Docs. 13 & 16.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED.**

## I. PROCEDURAL HISTORY

On July 15, 2004, Plaintiff filed applications for a period of disability, disability insurance benefits and supplemental security income, alleging a disability onset date of June 25, 2004. (R. 42-45.)  Plaintiff's applications were denied initially and upon reconsideration. (R. 30-33, 36-37.)  Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner and requested a hearing before an Administrative Law Judge ("ALJ"). (R. 38.)  The ALJ conducted Plaintiff's administrative hearing on December 19, 2006. (R. 267-278.)  The ALJ issued a decision unfavorable to Plaintiff on January 18, 2007. (R. 12-24.)  On August 14, 2007, the

Appeals Council denied Plaintiff's request for review of the hearing decision. (R. 5-7.) Plaintiff then appealed to this Court. (Doc. 1.)

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1]  Substantial evidence is more than a scintilla in that the evidence must do more than merely "create a suspicion of the existence of [a] fact," and must include "such relevant evidence as a reasonable person would accept as adequate to support the conclusion."[2]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]   The law

---

[1] *See* 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson v. Perales, 402 U.S. 389, 401(1971); Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982); *accord* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding court must scrutinize entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding court must also consider evidence detracting from evidence on which Commissioner relied).

[5] Keeton v. Dep't Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[9]  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10]  Third, if a claimant's impairments meet or equal an impairment listed in Title 20, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, she is disabled.[11]  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12]  Fifth, if a claimant's impairments (considering her residual functional capacity ("RFC"), age,

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. *See* Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] Id. § 404.1520(c).

[11] Id. § 404.1520(d).

[12] Id. § 404.1520(e).

education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide

---

[13] Id. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2.
In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.
Id. (internal citations omitted).

[16] Walker, 826 F.2d at 1002. Once the burden shifts to the Commissioner to show that the claimant can perform other work, the grids may come into play. Id.

[17] Phillips v. Barnhart, 357 F.3d 1232, 1243 (11th Cir. 2004); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987) ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III.  SUMMARY OF THE RECORD EVIDENCE

At the time of the hearing decision, Plaintiff was sixty-four (64) years old. (R. 270.)  He has a general equivalency degree (R. 270) and has previous work experience as a traveling salesperson (R. 56, 70, 206, 254, 275) and as an owner/operator of a pool contracting company. (R. 70, 254, 275.)  Plaintiff contends that he has been unable to work since June 25, 2004 due to back and hip pain, diabetes, a cerebrovascular accident ("CVA"), memory difficulty, and depression. (R. 48-49, 57, 62, 67-68, 270-71, 273.)

Plaintiff began his treatment with Dr. Bhadresh Patel, an internal medicine specialist, in 1997.  From 1997 through 2006, Dr. Patel treated Plaintiff for diabetes (R. 99-106, 107-11, 112-13, 124-28, 129-136), hyperlipidemia (R. 101, 124-28), a

---

[18] Walker, 826 F.2d at 1003.

[19] Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996).

[20] See id.

[21] See Doughty v. Apfel, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

gastrointestinal bleed (R. 99-100,152-58), atrial fibrillation (R. 96-98, 102-05), CVA (R. 174-95), gastroesophageal disease (R. 87-88), anxiety (R. 87), a rash (R. 84), a skin lesion (R. 78-81), increased stress (R. 77), pharyngitis (R. 76) and a thyroid condition. (R. 74.)

During this nine year time period, Dr. Patel's notes only reference mental health problems on two occasions. (R. 77, 87.)  The first time occurred on May 5, 2003 when Plaintiff reported that he was experiencing some anxiety (R. 87) and the second time was on November 12, 2004, when Plaintiff complained of an increase in stress due to his wife wanting a divorce. (R. 77.)  At that time, Plaintiff was prescribed Zoloft, an antidepressant and anxiety medication.[22] There is no evidence in Dr. Patel's records of any type of a mental status examination or clinical testing with regard to any mental health issues. The absence of such information is to be expected in view of the fact that Dr. Patel is an internal medicine specialist, and not a psychiatrist or mental health professional.

On October 12, 2004, Dr. Patel completed a Treating Source Mental Health Report. (R. 198-200.)  Dr. Patel observed that Plaintiff's mood and affect were sad and depressed. (R. 198, 200.)  Dr. Patel reported that Plaintiff's thought processes were confused, his thought content was unrealistic, his concentration and orientation were poor and he experienced memory loss.  According to Dr. Patel, Plaintiff did not experience hallucinations or perceptual disturbances and he was competent to independently manage his own benefits. (R. 199.)  Dr. Patel opined that Plaintiff was

---

[22] *See* Physician's Desk Reference website, *available* at http://www.pdrhealth.com.

incapable of sustaining work activity for eight hours a day, five days a week.

On February 9, 2003, Plaintiff was treated by Dr. Gopal Tatambhotla, at Seven Rivers Community Hospital, for a CVA.  (R. 179-182.)  The neurological examination suggested that Plaintiff had a right anterior circulation stroke with left sided findings. (R. 182.)  Plaintiff was admitted and treated with medication, telemetry monitoring, and physical therapy.  During that initial examination, Dr. Tatambhotla found Plaintiff to be alert and oriented times three and he also noted that Plaintiff did not have a history of depression or other psychiatric illnesses. (R. 180.)  During a follow up examination, Plaintiff reported that he was doing very well.  (R. 196.)

On December 4, 2004, Plaintiff underwent a consultative physical examination by Dr. Lawrence R. Field.  (R. 202-204.)  Plaintiff reported that he had been experiencing a personality change and was a "little bit angry" since his stroke. (R. 202.) However, Dr. Field noted that Plaintiff had a normal appearance and was alert and oriented to person, place, and time. (R. 203.)  Dr. Field diagnosed Plaintiff with a number of physical impairments, but found that "[m]entally, there are no impairments."  (R. 203.)

On December 15, 2004, Plaintiff underwent a consultative psychological evaluation with Dr. Steven L. Weiss, Ph.D.  (R. 205-207.)  Plaintiff complained to Dr. Weiss that since his stroke, he was emotional, tearful, had low energy, was irritable, had difficulty concentrating, and was beset with stress about his finances. (R. 205.)   Plaintiff denied suicidal ideation or intent, but did report one suicidal episode in the 1960's when his wife "ran off" with his brother. (R. 206.)  During that time, Plaintiff sought counseling but was not hospitalized. (R. 206.)

Dr. Weiss found Plaintiff oriented in all spheres and his insight and judgment

were within normal limits. (R. 206.)  Although Plaintiff exhibited a depressed mood, Dr. Weiss reported that Plaintiff was able to name the months of the year in forward and reverse direction without error; he could solve simple arithmetic in his head; he could perform all five instructions serially without error; he displayed auditory memory for digits; his numerical attention span was within normal limits for an individual his age, with six forward and four backward; he was able to answer five of six questions correctly about a simple story read aloud to him; and his verbal recall was three of four words after a ten minute interval.

During the consultative evaluation with Dr. Weiss, Plaintiff described his activities of daily living. (R. 207.)  According to Plaintiff, he can eat, dress himself, and maintain his personal hygiene without assistance or reminders from others.  Additionally, Plaintiff is able to take out the garbage, mow the lawn, perform general maintenance and upkeep of windows and doors, and paint around the house.  Plaintiff gets about 4 to 6 hours a night of uninterrupted sleep.  Although Plaintiff has an ability to complete household chores, he stated that his condition prohibits him from participating in recreational activities.

Dr. Weiss diagnosed Plaintiff with a mood disorder, specifically finding, that he was depressed due to a general medical condition. (R. 207.)  Although Plaintiff is able to write an occasional check, Dr. Weiss opined that Plaintiff may require some assistance in the management of funds because of his deteriorated handwriting and forgetfulness.

There are two Psychiatric Review Technique Forms completed by non-examining state agency physicians.  The first review was conducted by Dr. Steven L. Wise on

January 4, 2005. (R. 216-229.)  After reviewing Plaintiff's medical records, Dr. Wise concluded that Plaintiff did not have a severe mental impairment and observed that Plaintiff's only mental diagnosis was an affective disorder, or "mood" disturbance, due to a general medical condition. (R. 228.)  In support of this conclusion, he noted that Plaintiff's cognition was intact and he continued to be able to perform a variety of household chores. (R. 229.)  Dr. Wise opined that Plaintiff's degree of limitations only included mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. (R. 226.)

Dr. Janice H. Miller, Ph.D, was the second non-examining state agency physician who reviewed and evaluated the records and completed a Psychiatric Review Technique Form. (R. 230-243.)  Similar to the findings of Dr. Wise, Dr. Miller concluded that Plaintiff's depression was not a severe impairment and that Plaintiff only had mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace and no episodes of decompensation.  (R. 226.)  In support of this conclusion, Dr. Miller noted Plaintiff's ability to perform household chores and his lack of mental health treatment. (R. 242.)  Although he displayed a depressed mood, Plaintiff's mental health treatment was limited to the consultative evaluation.

On March 29, 2005, Plaintiff's wife, Nancy E. Hall, prepared a function report. (R. 55-63.)  In that report, Mrs. Hall described Plaintiff's illnesses and conditions and explained how these conditions limit or effect his activities.  Mrs. Hall stated that she is able to describe Plaintiff's daily activities because she spends approximately 16 hours a

day with him. (R. 55.) According to Plaintiff's spouse, Plaintiff is able to attend the movies on the weekend, read the daily newspaper, walk the dog, clean the pool, and can visit and play cards with friends. (R. 55-59.) Although Mrs. Hall must remind Plaintiff of his doctor appointments, she does not have to remind him to take his daily medications. (R. 57.) Plaintiff gets along well with family, friends, and others and is able to care of his own personal needs. (R. 56, 59.) Mrs. Hall has observed that Plaintiff is unable to sleep all night (R. 56) and that his energy level has effected his ability to swim, fish, hunt, and travel and has caused some "anti-social" behavior. (R. 60, 62.) Even though Plaintiff's energy level has been effected, Mrs. Hall reported that Plaintiff still drives a car and is able to go out on his own to shop for groceries and medications. (R. 58.) Mrs. Hall also advised that Plaintiff can pay bills, count change, handle a savings account, and can use a checkbook. Lastly, Mrs. Hall stated that Plaintiff has the ability to pay attention indefinitely, follow instructions, and that she has noticed no unusual behavior or fears in the Plaintiff. (R. 61.)

On April 29, 2005, Dr. Rueben E. Brigety, a state agency physician, reviewed the medical records and conducted an RFC assessment. (R. 244-251.) Dr. Brigety concluded that Plaintiff could perform modified light work. More specifically, he found that Plaintiff could lift and carry up to 20 pounds occasionally and 10 pounds frequently; he could sit or stand/walk up to six hours in an eight hour day; he had an unlimited ability to push or pull; could occasionally climb ramps, stairs, ladders, rope, scaffolds; and could frequently balance, stoop, kneel, crouch and crawl. Dr. Brigety found no visual, communicative, or manipulative limitations.(R. 247-48.) Finally, Dr. Brigety concluded that Plaintiff did not have any environmental limitations, with the exception

that he should avoid concentrated exposure to work hazards, such as, machinery and heights. (R. 248.)

At the administrative hearing on December 19, 2006, Plaintiff testified that his physical impairments included hip and back pain, diabetes, and poor vision. (R. 270-273.)  Plaintiff stated that he has become more emotional since his stroke. (R. 272.) Plaintiff described his activities of daily living to include, basic self-care, cleaning up the dishes, driving a car, grocery shopping, watching television and playing cards with a friend. (R. 274.)  Plaintiff testified that his physical ailments prevent him from exercising and working. (R. 275.)

In his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff has severe impairments of CVA and diabetes mellitus. (R. 17-18.)  However, the ALJ declined to find that Plaintiff's other conditions constituted severe impairments. (R. 18-20.)  The ALJ also determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4.  (R. 20.)

The ALJ then found that Plaintiff retained the RFC to lift/carry 20 pounds occasionally and 10 pounds or less frequently, he could stand and walk for 6 hours in an 8-hour workday, with no difficulty sitting throughout a normal workday. (R. 22.)  The ALJ concluded that Plaintiff could occasionally climb but should avoid concentrated exposure to work in a hazardous environment, unprotected heights or dangerous machinery.  The ALJ determined that Plaintiff could perform his past relevant work because the work did not require the performance of work-related activities precluded

by Plaintiff's RFC. (R. 24.) In reaching this conclusion, the ALJ relied upon the State Agency Medical Consultant, Dr. Brigety, in determining that Plaintiff could perform a modified but substantial range of light work which would include his past relevant work as a salesman and business owner. (R. 21, 24.) Therefore, the ALJ concluded that Plaintiff was not disabled.

## IV. DISCUSSION

The sole issue raised by Plaintiff is that the ALJ erred by failing to properly consider the opinion of Dr. Bhadresh K. Patel, Plaintiff's treating physician, with regard to Plaintiff's mental impairments. Dr. Patel opined that Plaintiff's depression prohibits him from sustaining work activity for 8 hours a day, 5 days a week.

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[23] If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[24]

However, the ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is

---

[23] Crawford v. Comm'r of Soc. Sec., 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records."). See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Comm'r of Soc. Sec., 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[24] 20 C.F.R. § 404.1527(d)(2).

wholly conclusory.[25] Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[26]

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion.[27] However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.[28]

After thoroughly reviewing the ALJ's decision, as well as the medical records at issue, the Court concludes that the ALJ did not violate the treating physician rule because the ALJ articulated specific reasons, fully supported by the record, for discounting Dr. Patel's October 12, 2004 assessment regarding Plaintiff's mental functional limitations.

Among other reasons discussed by the ALJ, the ALJ discounted Dr. Patel's opinion because Dr. Patel was not a mental health professional but is an internal

---

[25] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[26] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

[27] 20 C.F.R. § 404.1527(d).

[28] Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); see also 20 C.F.R. § 404.1527(d)(2).

13

medicine physician. Because Dr. Patel is an internal medicine specialist, his mental health findings were outside of his area of expertise. This view by the ALJ is both reasonable and logical and is consistent with the general view that more weight should be given to an opinion from a specialist than to one from a non-specialist.[29]

The fact that Dr. Patel was not a mental health professional, however, was not the only reason discussed by the ALJ for discounting Dr. Patel's opinion. The ALJ specifically discussed the fact that Dr. Patel's treatment records do not support his opinion that Plaintiff's depression prevents him from completing a normal workday or workweek. The only two notations in the treatment records concerning Plaintiff's depression relate to two occasions where Plaintiff reported that he was anxious and depressed, the latter of which occurred after Plaintiff's wife wanted a divorce. (R. 77, 87.)

In addition to the fact that Dr. Patel was not a mental health professional and that Dr. Patel's treatment records were not supportive of his opinion, the ALJ relied upon the thorough consultative mental health evaluation performed by Dr. Weiss, which was completely inconsistent with Dr. Patel's opinion. In contrast to Dr. Patel's evaluation and opinion, Dr. Weiss conducted an extensive consultative examination in which he found no significant mental status deficits or depression. (R. 205-207.)

The differences between Dr. Patel's report and Dr. Weiss' report are readily apparent with regard to the clinical evaluation that was conducted. In concluding that Plaintiff did not have any significant mental limitations, Dr. Weiss' report is replete with

---

[29] *See,* 20 C.F.R. § 404.1527(d)(3), (5)

14

a thorough discussion of the results of the mental evaluation, evidencing that Plaintiff had normal thought processes and no significant deficits in his concentration and memory. (R. 206.)  For example, Dr. Weiss noted that Plaintiff was able to name the months of the year in forward and reverse direction without error; he could solve simple arithmetic in his head; he could perform all five instructions serially without error; he displayed auditory memory for digits; his numerical attention span was within normal limits for an individual his age, with six forward and four backward; he was able to answer five of six questions correctly about a simple story read aloud to him; and his verbal recall was three of four words after a ten minute interval.  Lastly, Dr. Weiss specifically found that Plaintiff was oriented in all spheres with insight and judgment within normal limits.

Dr. Patel  - an internal medicine specialist - did not conduct any similar mental status evaluation, and instead simply offered conclusions without any supporting discussion, testing or mental evaluation. Where, as here, a treating physician offers an opinion with regard to a patient's inability to work that is wholly conclusory and unsupported by objective medical evidence the ALJ is fully authorized to disregard the opinion.[30]

In addition to the fact that Dr. Patel's opinion is inconsistent with the evaluation by Dr. Weiss, a specialist, Dr. Patel's opinion is also at odds with the evaluation and opinions of the two non-examining state agency physicians, Dr, Steven L. Wise, a

---

[30] See Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991)(a treating physician's opinion regarding an inability to work may be disregarded if it is unsupported by objective medical evidence or is wholly conclusory).

psychiatrist, and Dr. Janice H. Miller, Ph.D., a psychologist. (R. 216-243.)  In his evaluation, Dr. Wise noted that Plaintiff had only "mild deficits" and that his cognition was intact. (R. 229.)  Similarly, Dr. Miller concluded that Plaintiff's depression was not a severe impairment and that Plaintiff only had mild restrictions of activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. (R. 226.)  As the ALJ properly concluded these opinions are consistent with the record as a whole, and unlike Dr. Patel, are opinions from professionals who specialize in mental health treatment.

While not dispositive of the decision to discount the opinion of Dr. Patel, the ALJ also appropriately noted the complete absence of any ongoing mental health treatment by Plaintiff. Indeed, despite the fact that Dr. Patel prescribed Zoloft for Plaintiff because of depression, Dr. Patel never referred Plaintiff for any mental health treatment or follow-up.  (R. 77, 87.)

Moreover, as discussed by the ALJ, Plaintiff's activities of daily living were not consistent with Dr. Patel's opinion that Plaintiff was incapable of sustaining work activity for eight hours a day, five days a week. To the contrary, the activities Plaintiff was capable of performing are not the types of daily activities one would expect an individual would be able to perform who was incapable of sustaining work on a daily basis, five days a week. For example, Plaintiff reported that he is able to care for himself, make coffee, clean up the dishes, drive a car, take care of grocery shopping, watch television, play cards with friends, go to the movies with his wife, take out the garbage, mow the lawn, do general maintenance, painting and upkeep of windows and

doors around the house, read the daily newspaper, walk the dog, clean the pool, pay bills, count change, handle a savings account, and use a checkbook. (55-63, 274.) Where, as here, the assessment of a treating physician is inconsistent with an individual's actual activities the ALJ may disregard the assessment.[31]

While there is no doubt that Plaintiff has become more emotional as a result of his stroke, the Plaintiff did not list severe depression as a condition or illness on his disability report (R. 48) nor in his request for reconsideration. (R. 35.) The record also evidences that Plaintiff's wife, who is uniquely positioned to observe Plaintiff's conditions and limitations, stated that Plaintiff gets along well with family, friends, and persons in a position of authority, that he has the ability to pay attention indefinitely, follow instructions, and that she has not noticed any unusual behavior or fears in the Plaintiff. (R. 59-61.)

In sum, for these reasons, the Court finds that the ALJ did not err in discounting the opinion of Dr. Patel and that the ALJ articulated specific reasons, supported by substantial record evidence, for doing so. Accordingly, the decision of the Commissioner is due to be **AFFIRMED** and the Clerk is directed to enter final judgment consistent with this Order and to close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on December 8, 2008.

_____
GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel

---

[31] See e.g., Social Security Ruling 96-2p (http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-02-di-01.html)("For example, a treating source's medical opinion on what an individual can still do despite his or her impairment(s) will not be entitled to controlling weight if substantial, nonmedical evidence shows that the individual's actual activities are greater than those provided in the treating source's opinion.